**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**BOWEN, MICLETTE & BRITT OF**
**FLORIDA, LLC, f/k/a HUCKLEBERRY**
**ACQUISITION CO., LLC,**

        **Plaintiff,**

**-vs-**                                    **Case No.  6:12-cv-306-Orl-28KRS**

**TERRY LEE JAMES,**

        **Defendant.**
_____

## ORDER

Bowen, Miclette & Britt of Florida, LLC ("Plaintiff"), formerly known as Huckleberry Acquisition Co., filed this suit against Terry Lee James ("James") to recover on three promissory notes and personal guarantees. (Compl., Doc. 1). Along with his Answer, James filed affirmative defenses and counterclaims against Plaintiff and several other parties. (Doc. 27).

The case is now before the Court on Plaintiff's Motion for Summary Judgment (Doc. 28) and James's Memorandum in Opposition (Doc. 41). Having considered the parties' filings, the Court concludes that Plaintiff's motion must be denied.

### I. Background

At times relevant hereto, James was an officer, director, and shareholder of HSH/Huckleberry, Sibley & Harvey Insurance and Bonds, Inc. ("HSH"), an insurance agency. (James Aff., Ex. 3 to Doc. 41, ¶ 1). James was also an officer and director of Friday's

Foursome, Inc. ("Friday's Foursome"), and HSH conducted its business on real property that it leased from Friday's Foursome. (Id. ¶¶ 2 & 8). On January 31, 2007, HSH, through its then-President, Benjamin C. Sibley, executed and delivered to CNLBank ("CNL") three promissory notes: one in the amount of $6.6 million ("the $6.6 million Note"), one in the amount of $1 million ("the $1 million Note"); and one in the amount of $500,000 ("the $500,000 Note"). (Promissory Notes, Exs. A, D, & G to Doc. 28).[1]

The same day Sibley executed the promissory notes on behalf of HSH, James executed Continuing Guaranty Agreements ("the Guaranty Agreements") as to each of the three promissory notes. (Exs. B, E, & H to Doc. 28). In the Guaranty Agreements, James "unconditionally guarantee[d] to [CNL] the payment, when due, by acceleration or otherwise, of the Loan principal, together with all interest, costs, expenses, and attorneys' fees related to the Indebtedness." (Guaranty Agreements at 1). Each of the three notes states that it is secured by a mortgage, a security agreement, a stock pledge, UCC financing statements, the guaranty agreements of James and two other guarantors,[2] a loan agreement, and other

---

[1] The $6.6 million Note provided for monthly payments of principal and interest in the amount of $77,741.67 from March 1, 2007, until January 1, 2017. ($6.6 million Note at 1). The $1 million Note evidenced a line of credit, and it provided for monthly interest payments for twelve months following an advance; thereafter, payments of principal and interest would be made for thirty-six months, with the remaining balance due forty-eight months after the date of the advance. ($1 million Note at 2). Pursuant to Note Modification Agreements, interest-only payments were allowed on both the $6.6 million Note and the $1 million Note for the months of August, September, and October 2010. (Note Modification Agreements, Exs. C and F to Doc. 28). The $500,000 Note provided for monthly interest payments, with unpaid interest and principal due and payable upon demand. ($500,000 Note at 1-2).

[2] Sibley also executed personal guaranty agreements, and BCB has brought a separate lawsuit against Sibley—Case No. 6:12-cv-493-Orl-28KRS in this court—to collect under those agreements. The case against Sibley has been stayed since September 2012

documents.

On February 28, 2011, via a Loan Sale Agreement and three Allonges between CNL and Plaintiff,[3] Plaintiff became the holder of the promissory notes and the Guaranty Agreements.  (Loan Sale Agreement, Ex. I to Doc. 28; Allonges, Exs. J, K, & L to Doc. 28).  Plaintiff has presented evidence that at the time it acquired the notes, the outstanding balance of the $6.6 million Note was $4,884,251.90; the outstanding balance of the $1 million Note was $366,369.69; and the outstanding balance of the $500,000 Note was $120,600.83.  (Larry Karren Decl., Ex. M to Doc. 28, ¶ 6; see also Loan Sale Agreement at 4).  Plaintiff's Chief Financial Officer also attests that HSH did not make any payments on the notes to Plaintiff after Plaintiff acquired the notes.  (Karren Decl. ¶ 6).

Plaintiff "made demand upon HSH for payment of the amounts due and owning [sic] under the promissory notes," but "HSH did not comply with the demand."  (Id. ¶ 7).  Plaintiff then "sought redress for the amounts due and owing under the promissory notes from James, in accordance with James's personal guarantees," but "James has refused to comply with his repayment obligations under the personal guarantees."  (Id.).  Accordingly, Plaintiff filed this action against James to recover the balances on the three loans, and Plaintiff now seeks summary judgment, asserting that there is no genuine issue of material fact regarding

---

due to Sibley's filing of a suggestion of bankruptcy.  The other guarantor named in the promissory notes is Friday's Foursome.

[3]The Loan Sale Agreement states that it is between CNL and Huckleberry Acquisition Co., LLC.  As stated in the Complaint, "[o]n or about March 31, 2011, Huckleberry Acquisition Co., LLC amended its name to Bowen, Miclette & Britt of Florida, LLC."  (Doc. 1 ¶ 1).

James's breach of his personal guarantees. Plaintiff claims that as of May 12, 2012, James owed the total of the three note balance amounts stated above, plus penalties, for a total requested judgment as of that date of $6,009,586.60 along with attorney's fees and costs. (See id. ¶ 8; Pl.'s Mot. Summ. J. at 13-14).

In his opposition memorandum, James contests Plaintiff's entitlement to summary judgment, arguing that genuine issues of material fact remain regarding how much, if anything, he owes on the debts and as to his affirmative defenses to payment, which include estoppel and accord and satisfaction. James explains in his affidavit that after Plaintiff purchased the notes and the related mortgage, security, and stock pledge agreements from CNL on February 28, 2011, Plaintiff immediately declared the notes in default and acted to foreclose its security interests in HSH assets, culminating in a public, non-judicial sale of HSH's assets pursuant to section 679.610, Florida Statutes, on March 21, 2011. (James Aff., ¶¶ 38-43; see also Affidavit of Lynn James Hinson, Ex. 1 to Doc. 41). Plaintiff credit-bid for $1 million—though Plaintiff allegedly valued the assets at $8 million rather than $1 million—and was the winning bidder. (Id. ¶¶ 43-44).

Additionally, James attests that on March 8, 2011, Plaintiff sued HSH and Friday's Foursome in state court to foreclose the mortgage on the Friday's Foursome building and collect the balance on the promissory notes from HSH. (Id. ¶ 46; see also state court complaint, Ex. A to Doc. 42). The state court entered a final judgment of foreclosure in the amount of $4,575,750.05 on May 26, 2011, and at the foreclosure sale in June 2011 Plaintiff purchased the Friday's Foursome property with a credit bid. (Id. ¶ 48; see also Final Judgment of Foreclosure, Ex. C to Doc. 42). James states that "[u]pon completion of the

foreclosure, . . . [Plaintiff] had seized and was in control of all of the assets and real property which secured the promissory notes, thereby obtaining complete control over, and ownership of, HSH and Friday's Foursome's assets and business." (Id. ¶ 49).  James asserts that "Plaintiff's pre-suit collection actions resulted in the debts at issue being completely satisfied, or, at worst, significant credit is due James for the assets collected by Plaintiff." (Doc. 41 at 4).  James also challenges the reasonableness of the asset sale and asserts that genuine issues of material fact remain as to his affirmative defenses.  Plaintiff has not filed a reply memorandum, though such a reply is permitted.  (See Case Management & Scheduling Order, Doc. 36, at 6).

## II.  Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Summary judgment may be granted if the non-moving party's evidence is merely

colorable or is not significantly probative." Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer, 243 F. Supp. 2d at 1262 (quoting Anderson, 477 U.S. at 251-52).

### III. Discussion

Plaintiff has not established entitlement to summary judgment. James has come forth with evidence—including affidavits and state court documents—supporting his contention that Plaintiff has already recovered assets sufficient to satisfy some if not all of the debts at issue. James has thus adduced evidence establishing the existence of genuine issues of material fact as to the merits of Plaintiff's case, and Plaintiff's motion for summary judgment must be denied.

### IV. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment (Doc. 28) is **DENIED**.

2. James's Request for Judicial Notice (Doc. 42), as to which no objection has been filed, is **GRANTED**. The Court takes judicial notice of the state court documents attached to the Request.

3.  Plaintiff's Objections to Defendant's Summary Judgment Evidence (Doc. 66), which were filed more than two months after the challenged evidence was submitted, are **rejected as untimely**.[4]

**DONE** and **ORDERED** in Orlando, Florida this 7th day of March, 2013.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party

---

[4] In any event, the Court has not relied on any of the challenged paragraphs of James's affidavit because such reliance was not necessary to the rulings herein.