# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**BOWEN, MICLETTE & BRITT OF
FLORIDA, LLC, f/k/a HUCKLEBERRY
ACQUISITION CO., LLC,**

<b>Plaintiff,</b>

-vs-                                           Case No.  6:12-cv-306-Orl-28KRS

**TERRY LEE JAMES,**

<b>Defendant.</b>

_____

# REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motions filed

herein:

| MOTION: | MOTION BY COUNTER-DEFENDANTS AMERISURE INSURANCE COMPANY, AGENCY CAPITAL GROUP AND THOMAS HOEG TO DISMISS AMENDED COUNTERCLAIM (Doc. No. 108) |
|---|---|
| **FILED:** | **April 9, 2013** |

<table>
<tr><td><strong>MOTION:</strong></td><td><strong>COUNTER-DEFENDANTS BOWEN, MICLETTE &amp; BRITT OF FLORIDA, LLC'S, BOWEN, MICLETTE &amp; BRITT, INC.'S, AND EDWARD BRITT'S MOTION TO DISMISS COUNTER-PLAINTIFF TERRY JAMES'S AMENDED COUNTERCLAIMS FOR FAILURE TO STATE A CLAIM UNDER F.R.C.P. 9(B) AND 12(B)(6) (Doc. No. 110)</strong></td></tr>
<tr><td><strong>FILED:</strong></td><td><strong>April 10, 2013</strong></td></tr>
</table>

## I.   PROCEDURAL HISTORY.

On February 24, 2012, Plaintiff, Bowen, Miclette & Britt of Florida, LLC ("BMB Florida"), filed a complaint against Defendant, Terry Lee James ("James"), alleging that James had breached three promissory notes and personal guaranties.  Doc. No. 1.  On May 14, 2012, James responded to BMB Florida's complaint, filing his answer and affirmative defenses.  Doc. No. 27.  He also included  multiple counterclaims against BMB Florida and others, specifically:

- Count I: Breach of Oral Contract against Bowen, Miclette & Britt, Inc. ("BMB Texas")[1], BMB Florida, and Edward G. Britt, Jr. ("Britt");

- Count II: Fraud against BMB Texas, BMB Florida, Britt, and Larry Karren ("Karren");

- Count III: Fraud against Agency Capital Group, LLC ("ACG"), Amerisure Insurance Company ("Amerisure"), and Thomas E. Hoeg ("Hoeg");

- Count IV: Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") against all Counter-Defendants;

- Count V: Conspiracy against BMB Texas, BMB Florida, Britt, Karren, ACG, Amerisure, and Hoeg;

---

[1]James's original counterclaims are not entirely clear or consistent as to the identity of this Counter-Defendant.  Bowen, Miclette & Britt, Inc. is named as a Counter-Defendant and is referred to as "BMB" throughout the original counterclaims.  However, some of the *ad damnum* clauses of James's original counterclaims refer to "Bowen, Miclette & Britt of Texas, LLC," instead of Bowen, Miclette & Britt, Inc.  For the purposes of this Report and Recommendation, I assume that Bowen, Miclette & Britt, Inc. and Bowen, Miclette & Britt of Texas, LLC are intended to refer to the same entity in James's original counterclaims.

- Count VI: Unlawful retaliation against BMB Texas; and

- Count VII: Whistle blower retaliation against BMB Texas.

*Id.* All of the Counter-Defendants filed motions to dismiss James's counterclaims.  Doc. Nos. 48, 49, 57, 69, 83.

On March 8, 2013, the Court granted the motions to dismiss and dismissed James's counterclaims without prejudice.  In so doing, the Court stated:

> Even affording James a liberal reading of his counterclaims, the Counter-Defendants raise substantial arguments as to the insufficiency of the counterclaims and James has provided only a general response that does not address these deficiencies at all.  These deficiencies pertain both to the general pleading requirements of Rule 8(a) as well as the particularity requirement of Rule 9(b) as to James's fraud claims.

Doc. No. 88 at 2. Judge Antoon also granted James leave to file amended counterclaims.  *Id.* at 3.

On March 27, 2013, James filed his amended counterclaims.  Doc. No. 97.  With his amended counterclaims, James dropped Karren as a Counter-Defendant and dropped his counterclaims for FDUTPA violations, unlawful retaliation, and whistle blower retaliation.  He also added a count wherein he alleged that BMB Florida violated section 679.615(4) of the Florida Statutes and sought recovery of any surplus from BMB Florida's sale of certain assets.  As currently formulated, the amended counterclaims are as follows:

- Count I: Breach of oral contract against BMB Texas[2], BMB Florida, and Britt;

- Count II: Fraud against BMB Florida and Britt;

---

[2]As with his original counterclaims, James's amended counterclaims are not entirely consistent in their references to this party.  Once again, Bowen, Miclette & Britt, Inc. is named as a Counter-Defendant.  In the amended counterclaims, Bowen, Miclette & Britt, Inc. is referred to as "BMB Texas."  However, as in the original counterclaims, some of the *ad damnum* clauses in the amended counterclaims refer to "Bowen, Miclette & Britt of Texas, LLC," instead of Bowen, Miclette & Britt, Inc.  As with the original counterclaims, for the purposes of this Report and Recommendation, I assume that Bowen, Miclette & Britt, Inc. and Bowen, Miclette & Britt of Texas, LLC are intended to refer to the same entity in James's amended counterclaims.

- Count III: Fraud against ACG, Amerisure, and Hoeg;

- Count IV: Conspiracy against BMB Texas, BMB Florida, Britt, ACG, Amerisure, and Hoeg; and

- Count V: Violation of Fla. Stat. § 679.615(4) against BMB Florida.

ACG, Amerisure, and Hoeg filed a motion to dismiss James's amended counterclaims on April 9, 2013. Doc. No. 108. With their motion, they filed a red-lined document showing the differences between James's original counterclaims and his amended counterclaims. Doc. No. 108-1. BMB Texas, BMB Florida, and Britt filed a motion to dismiss James's amended counterclaims on April 10, 2013. Doc. No. 110.

Up until this point, James had technically been proceeding *pro se* (although many of his filings, including the amended counterclaims, bore a notation stating that they had been prepared with the assistance of counsel, *see, e.g.*, Doc. No. 97 at 27). On May 1, 2013, an attorney entered an appearance on behalf of James. Doc. No. 116. James filed his responses to Counter-Defendants' motions to dismiss his amended counterclaims, through counsel, on May 13, 2013. Doc. Nos. 122, 123.

Counter-Defendants' motions to dismiss have been referred to me for issuance of a report and recommendation and are now ripe for ruling.

## II.    APPLICABLE LAW.

Generally speaking, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P.

8(a)(2).  "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 US. 662, 678 (2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a complaint or counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  Dismissal is warranted, however, if, assuming the truth of the factual allegations of the complaint or counterclaim, there remains a dispositive legal issue which precludes relief.  *Foster v. Jeter*, Case No. 6:11-cv-158-Orl-28DAB, 2012 WL 6645010, at *2 (M.D. Fla. Dec. 20, 2012) (citing *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Brown v. Crawford Cnty., Ga.*, 960 F.2d 1002, 1010 (11th Cir. 1992)).

One exception to the general pleading standards explained above is that, pursuant to Fed. R. Civ. P. 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud . . . ."  "Particularity means that a plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them."  *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006) (citations and internal quotations omitted) (alteration in original).

In all cases, the Court should construe a complaint drafted by a *pro se* litigant more liberally than it would pleadings drafted by attorneys.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

## III.    ANALYSIS.

James's amended counterclaims include one new claim and four (4) claims that have previously been before the Court.  Because the issues raised by these two sets of claims are somewhat different, I address them separately, below.

   A.   *Counts I-IV: Breach of Oral Contract, Fraud, and Conspiracy.*

   As mentioned above, James's original counterclaims included claims for breach of contract, fraud, and conspiracy against BMB Florida, BMB Texas, Britt, ACG, Amerisure, Hoeg, and Karren.  James's amended counterclaims continue to assert claims for breach of contract, fraud, and conspiracy against all of these Counter-Defendants except Karren.  I have reviewed James's amended counterclaims, and, as argued by the Counter-Defendants, they are nearly identical to the original counterclaims that were dismissed by the Court.[3]  Apart from dropping several claims and eliminating Karren as a Counter-Defendant, the differences are minor.  As a result, the Counter-Defendants have moved to dismiss James's amended counterclaims on virtually the same grounds advanced by their motions to dismiss the original counterclaims.

   In his responses to the motions to dismiss, James, through his newly-retained attorney, has not explained how his minor revisions cure the deficiencies already identified by the Court.  Instead, James admits that the amended counterclaims have "some flaws" and provides an extensive re-telling of the facts allegedly underlying the amended counterclaims.  Not all of these facts are included in the amended counterclaims.  To take one example, in his responses, James provides specific locations for some of the conversations underlying his fraud claims.  Doc. No.

---

   [3]ACG, Amerisure, and Hoeg provided a red-lined document showing the differences between James's original counterclaims and the amended counterclaims.  Doc. No. 108-1.  I have not relied on that document, but instead made my own comparison.  That said, James has not objected that the red-lined document is inaccurate in any way.

122 at 5-6; Doc. No. 123 at 5-6 ("During a meeting at Amerisure's corporate offices in

Farmington Hills, Michigan" and "at a hotel near the Orlando International Airport").  To take

another example, in his response to the motion to dismiss filed by BMB Florida, BMB Texas, and

Britt, James claims that, after James's initial negotiations related to a written agreement with BMB

Florida, BMB Texas, and Britt broke down, "a subsequent oral contract was formed which

mimicked the essential terms of the proposed written agreement."  Doc. No. 123 ¶ 30.  James goes

on to provide terms for the "subsequent oral contract" and describe how BMB Florida, BMB

Texas, and Britt breached that contract.  *Id.* ¶¶ 31, 36.  The amended counterclaims do not mention

a "subsequent oral contract."  And, even if the amended counterclaims could be construed to refer

to such a subsequent oral contract, the terms of this alleged subsequent oral contract and the ways

in which BMB Florida, BMB Texas, and Britt allegedly breached the contract as stated in James's

amended counterclaims do not appear to match up precisely with the allegations of the amended

counterclaims.  Based on this re-casting of the facts, James provides legal arguments for why his

amended counterclaims should not be dismissed.

Without opining on the sufficiency of the arguments James makes based on the factual

scenario set forth in his responses to the Counter-Defendants' motions to dismiss, I note that the

Court cannot consider matters beyond James's amended counterclaims without converting

Counter-Defendants' motions to dismiss into motions for summary judgment, Fed. R. Civ. P.

12(d), which would be inappropriate at this early stage of the case.  When James's factual re-

casting is removed from the equation, the fact remains that the Court has already determined that

James's original counterclaims for breach of contract, fraud, and conspiracy were subject to

dismissal.  It also remains true that James's amended counterclaims (as currently stated) are nearly

identical to the original counterclaims and that James has not explained how the minor differences would alter the Court's original analysis of those claims.  Accordingly, I recommend that the Court dismiss Counts I through IV of James's amended counterclaims.

        *B.      Count V: Violation of Fla. Stat. § 679.615(4).*

In addition to claims already raised in his original counterclaims, James's amended counterclaims include a claim that BMB Florida has violated Fla. Stat. § 679.615(4), which requires payment of a surplus, if any, to a debtor when a secured party disposes of collateral under a security interest.  Specifically, Fla. Stat. § 679.615(4) provides:

> If the security interest under which a disposition is made secures payment or performance of an obligation, after making the payments and applications required by subsection (1) and permitted by subsection (3):
>
> (a)    Unless paragraph 1(d) requires the secured party to apply or pay over cash proceeds to a consignor, the secured party shall account to and pay a debtor for any surplus; and
>
> (b)    The obligor is liable for any deficiency.

As relevant to this claim, James alleges that he was the owner of a one-half interest in Huckleberry, Sibley & Harvey Insurance and Bonds, Inc. ("HSH").  Doc. No. 97 ¶ 2.  He alleges that HSH executed and delivered three promissory notes to CNLBank ("CNL") and that, in connection with those promissory notes, he and the other owners of HSH executed continuing guaranties.  *Id.* ¶¶ 11-12.  James alleges that BMB Florida later purchased those promissory notes from CNL.  *Id.* ¶¶ 43-44.  James alleges that, prior to the purchase, BMB Florida had agreed never to sue him personally under the promissory notes.  *Id.* ¶¶ 35, 59-60.  James alleges that, after purchasing the promissory notes, BMB Florida acted to foreclose its security interest in assets owned by HSH pursuant to Fla. Stat. § 679.610.  *Id.*  ¶¶ 47, 91.  James alleges that BMB held a

public non-judicial sale of HSH's assets on March 21, 2011, and that BMB Florida made the winning bid of $1 million.  *Id.* ¶ 48.  James alleges, upon information and belief, that BMB Florida valued those assets at approximately $8 million at the time of the sale.  *Id.* ¶¶ 49, 93. James alleges that the preparation and processing of the auction for the sale of HSH's assets was not conducted in a commercially reasonable manner as required by Fla. Stat.  § 679.610 in that it was insufficiently advertised and was conducted in a manner that did not allow potential third-party buyers access.  *Id.* ¶¶ 50, 92.  James also alleges that the debt secured under the relevant security agreements was fully satisfied by the assets from the public sale.  Finally, James alleges that, pursuant to Fla. Stat. § 679.615(4), BMB was required to account to and pay over to James any surplus from the sale and that he is due all such surplus over and above the amounts satisfied under the relevant security agreements.  *Id.* ¶¶ 94-95.

In moving to dismiss this claim, BMB Florida interpreted James to be alleging a claim for damages pursuant to Fla. Stat. § 679.625, which sets forth the remedies available when a secured party does not comply with the requirements of Chapter 679 of the Florida Statutes, including the requirement to dispose of collateral in a commercially reasonable manner, as set forth in Fla. Stat. § 679.610.  Specifically, BMB interpreted James to be seeking to recover a surplus pursuant to Fla. Stat. § 679.625(4), which provides that a debtor whose deficiency is eliminated under Fla. Stat.    § 679.626 may recover damages for the loss of any surplus.  Fla. Stat. § 679.626, in turn, provides rules whereby a debtor's deficiency may be reduced or eliminated if a secured party failed to comply with the statute's requirements relating to collection, enforcement, disposition, or acceptance, such as by failing to conduct an asset sale in a commercially reasonable manner.

BMB Florida argues that James fails to state a claim for damages under this section because the amended counterclaims show that there was an outstanding balance of at least $5.387 million on the promissory notes purchased by BMB Florida and that the winning bid for HSH's assets was only $1 million, thereby establishing that there is no surplus to be paid.  Doc. No. 110 at 13-14 (citing Doc. No. 97 ¶ 24).  BMB Florida also argues that a party can recover damages under Fla. Stat. § 679.625 only if a deficiency or surplus is "at issue" pursuant to Fla. Stat. § 679.626 and, relying on *Belize Telecom Ltd. v. Gov't of Belize*, Case No. 05-20470-CIV, 2005 WL 4868966 (S.D. Fla. June 6, 2005), that a surplus is not "at issue" in the instant case because HSH's deficiency has not been eliminated.  *Id.* at 14.  BMB Florida argues that, in this analysis, James's own subjective belief that HSH's assets are worth at least $8 million is irrelevant.  *Id.* at 15.  In making these arguments, BMB Florida also points out that HSH, not James, was the debtor with respect to the promissory notes purchased by BMB Florida and that James has not established that he (as opposed to HSH) is entitled to recover any surplus remaining after the sale of HSH's assets. *Id.* at 14-15.  Finally, BMB Florida argues that James's claim for a surplus should be dismissed because, pursuant to the guaranty agreements referred to in the amended counterclaims, James agreed that his indebtedness with respect to the promissory notes is absolute, unconditional, and one for which he is primarily liable, that the guaranties are immediately enforceable against James without BMB Florida needing to seek other redress for the amounts due and owing, and that he was precluded from asserting any defense based upon any transfer by BMB Florida of all or any part of the property or collateral as part of the loan transactions.  *Id.* at 15-17.

In response, James does not address most of BMB Florida's arguments.  In particular, he does not address BMB Florida's argument that James has not shown that he, as opposed to HSH,

is entitled to any surplus.  Instead, James argues that his claim for failure to pay surplus monies is "not as simple as Plaintiffs/Counter-Defendants state in its Motion to Dismiss." Doc. No. 123 at 18.  In giving further explanation of this claim, James refers to facts that are not alleged in the amended counterclaims, including alleging that: (1) the assets sold at auction included HSH's book of insurance business, which generated gross annual revenues of $8 million and would typically have an estimated market value of one-and-a-half times the gross annual revenues; (2) the estimated fair market value of HSH was approximately $12 million; and (3) the $1 million BMB Florida paid for HSH's assets was far below fair market value.  *Id.* at 18-19.  He then offers what he refers to as an "analogous scenario," whereby a lender foreclosing on real estate pays $100 for a property for which $100,000 remains due and owing on the loan.  Without citing to any authority, James asserts that the lender is not entitled to the balance of $99,900, but instead cannot pursue a borrower or guarantor for any deficiency until it first has had a deficiency hearing to establish the difference between the amount paid at auction and the fair market value of the real estate.  James than asserts, again without citing to any authority, that he "is entitled to the surplus difference between the fair market value of the assets sold and amount owed under the note once the fair market value is established." *Id.* at 19.  Finally, James argues that, if the Court rules that a valid agreement existed whereby BMB Florida would not sue James personally under the notes, James's obligations under the guaranty will be moot, and he "will be due an even greater amount of offset, surplus and damages." *Id.*

     As he did with Counts I-IV, James has used his response brief as an opportunity to re-cast this claim.  James makes reference to facts not included in the amended counterclaims – such as an allegation that HSH's assets were sold far below their fair market value of $12 million – and

makes an argument based on those facts.  Although the basis for those arguments is unclear (and does not appear to rely on Chapter 679 of the Florida Statutes, as does his claim for payment of a surplus as currently pleaded), it appears that James may be backing away from the allegations of commercial unreasonableness contained in the amended counterclaims and instead pursuing some other theory under which he is allegedly entitled to payment of a surplus.  Regardless, as stated above, the Court cannot consider matters outside of James's amended counterclaims in ruling on BMB Florida's motion to dismiss.  As currently pleaded, James's claim for violation of Fla. Stat. § 679.615(4) does not include facts setting out a plausible claim that James is entitled to payment of any surplus remaining after the sale of HSH's assets (as opposed to any entitlement that HSH might have).  Accordingly, I recommend that the Court dismiss Count V of James's amended counterclaims.

C.     *Leave to Amend.*

The Counter-Defendants request that all of James's amended counterclaims be dismissed with prejudice.  Based on the history of this case, I recommend that the Court not do so.  Although James seems to have received some assistance from an attorney at earlier stages of this litigation, he has only recently retained counsel to represent him officially in this case.  Based on the content of James's responses to the Counter-Defendants' motions to dismiss, it also appears that the facts supporting James's claims against the Counter-Defendants may not be entirely adequately stated by the amended counterclaims as currently formulated.  To facilitate the resolution of these claims on the merits, I recommend that James be given leave to re-file his amended counterclaims, if he can state one or more actionable claims in accordance with Fed. R. Civ. P. 11 and the applicable pleading requirements.

-12-

**IV.     RECOMMENDATION.**

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the Court

**GRANT in part and DENY in part** Counter-Defendants' motions to dismiss James's amended

counterclaims, **DISMISS** James's amended counterclaims without prejudice, and **GRANT** James

leave to file second amended counterclaims within fourteen (14) days of the date of the Court's

Order on this Report and Recommendation, if he can state one or more actionable claims in

accordance with Fed. R. Civ. P. 11 and the applicable pleading requirements.

Failure to file written objections to the proposed findings and recommendations contained

in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from

attacking the factual findings on appeal.

Recommended in Orlando, Florida on June 10, 2013.

*Karla R. Spaulding*
_____
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

-13-